# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SARA WHITE DOVE-RIDGEWAY | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | C.A. No. 19-35-LPS-MPT |
| | ) | |
| NANCY A. BERRYHILL[1] | ) | |
| Acting Commission of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDATION

## I. BACKGROUND

Plaintiff, Sara White Dove-Ridgeway, appeals the decision of the administrative

law judge ("ALJ"), denying her claim for disability insurance benefits ("DIB") and

supplemental security income ("SSI").  She argues, among other things, that the ALJ

who presided over her administrative hearing, was not properly authorized to act under

the Appointments Clause of the United States Constitution, U.S. CONSTI. Art. II, § 2,

Cl. 2, and claims that she is entitled to remand for a hearing before a constitutionally

appointed ALJ.[2]  The Commissioner does not contest that the ALJ's appointment was

constitutionally deficient, but asserts that plaintiff forfeited judicial review of this claim by

failing to raise it at the administrative level,[3] under undefined procedures.  This court

disagrees, and recommends this matter be remanded for a new hearing before a

---

[1] Andrew Saul replaced Nancy Berryhill as Acting Commissioner of Social
Security on June 17, 2019.
[2] D.I. 16-1 at 8-12; D.I. 21 at 4-6.
[3] D.I. 20 at 14-24.

different, constitutionally appointed ALJ.

## II.    PROCEDURAL HISTORY

This action arises from the denial of plaintiff's claim for Social Security benefits. On November 9, 2013, plaintiff filed an application for DIB under Title II of the Social Security Act ("Act"), and on November 12, 2013, she filed an application for SSI under Title XVI of the Act.[4]  In her applications, plaintiff alleged that her disability began on August 15, 2010.[5]  Both her claims were denied on October 28, 2014, and upon reconsideration on October 23, 2015.[6]  Thereafter, on November 3, 2015, plaintiff filed a request for a hearing before an ALJ.  The ALJ granted her request, and on June 19, 2017, plaintiff and a vocation expert appeared and testified at the hearing.[7]  On July 5, 2017, ALJ Jack S. Pena found plaintiff not disabled.[8]  Following the ALJ's unfavorable decision, plaintiff filed a request for review, which the Appeals Council denied.[9]  On January 7, 2019, she filed an appeal of the ALJ's decision seeking judicial review from this court.[10]  Presently under consideration are the cross motions for summary judgment filed by the parties.[11]

## III.    DISCUSSION

Neither the Supreme Court nor United States Court of Appeals for the Third

---

[4] D.I. 13-2 at 29.
[5] *Id.*
[6] *Id.*
[7] D.I. 13-2 at 1; D.I. 16-1 at 1.
[8] D.I. 13-2 at 39; D.I. 20 at 1.
[9] D.I. 13-2 at 1-5; D.I. 16-1 at 1.
[10] D.I. 2 at 1.
[11] D.I. 16-1; D.I. 20.

Circuit have addressed whether *Lucia v. SEC*[12] is applicable to Social Security ALJs, and courts within this Circuit have diverged on this issue.[13]  This issue is currently under review by the Third Circuit on a consolidated appeal.[14]  Until a decision is rendered by the Third Circuit, this court joins the opinions of Chief Judge Conner,[15] Judge Kearney,[16] Judge Lloret,[17] and Judge Strawbridge.[18]  Therefore, this court recommends plaintiff's motion be granted, and this matter be remanded for proceedings before a properly appointed ALJ, under Article II, Section 2, Clause 2 of the United States Constitution.

## A.    The Appointments Clause Standard under *Lucia*

In *Lucia*, the Supreme Court considered whether ALJs of the Security and Exchange Commission ("SEC") qualify as "Officers of the United States" within the meaning of the Appointments Clause.[19]  The Court found that the ALJs of the SEC

---

[12] 138 S. Ct. 2044 (2018) (where the application of the Appointments Clause and Article II, Section 2, Clause 2 of the United States Constitution were addressed.).

[13] *Anderson v. Saul,* 2019 U.S. Dist LEXIS 21390, at *14-15 (E.D. Pa. Dec. 12, 2019) *compare Marchant o/b/o A.A.H. v. Berryhill,* 2268982 (E.D. Pa. May 28. 2019); *Muhammad v Berryhill*, 381 F. Supp. 3d 462 (E.D. Pa. 2019); *Cox v. Berryhill*, 2018 WL 7585561 (E.D. Pa. Dec. 18, 2018); *Culclasure v. Comm'r of the Soc. Sec. Admin.*, 375 F. Supp. 3d 559 (E.D. Pa 2019), appeal No. 19-2386 3d Cir. June 17, 2019; *Cirko v. Berryhil*, 2019 WL 1014195 (M.D. Pa. Mar. 4, 2019), appeal No. 19-1772 3d Cir. Apr. 10, 2019; *Bizarre v. Berryhill*, 364 F. Supp. 3d 418 (M.D. Pa 2019), appeal No. 19-1773 3d Cir. Apr. 17, 2019.  The United Stated District Court for the District of Delaware has not previously addressed this issue.

[14] *Id. See also*, *Perez v. Berryhill*, No. 18-1907 (Doc. 15) (E.D. Pa. Jan 7, 2019), Report and Recommendation adopted (Doc. 22), 2019 U.S. Dist. LEXIS 84678 (E.D. Pa. Apr. 23, 2019), appeal No. 19-2426, 3d Cir. June 20, 2019.

[15]*Bizarre v. Berryhill*, 364 F. Supp 418 (M.D. Pa. 2019)

[16] *Culclasure v. Comm'r of the Soc. Sec. Admin.*, 375 F. Supp 3d 559 (E.D. Pa. 2019.

[17] *Harold v. Saul*, 2019 U.S. Dist. LEXIS 197421 (E.D. Pa. Nov. 13, 2019)

[18] *Bruson v. Saul*, 2019 U.S. Dist. LEXIS 125366 (E.D. Pa. July 26, 2019).

[19] 138 S. Ct. at 2051.  The Appointments Clause provides that the power to appoint, among other positions, "Officer of the United States," shall reside with "the President alone, in the Courts of Law or the Heads of Departments."

were "Officers", within the meaning of and subject to, the Appointments Clause,[20] and

determined that the designation of an ALJ by an SEC staff member– and not the

President, Court of Law or Head of a Department– violates the Appointments Clause.[21]

The Court concluded that the appropriate remedy was a new hearing before a "properly

appointed official."[22]  The Court also held that relief should be granted to "one who

makes a timely challenge to the constitutional validity of the appointment of an officer

who adjudicates his case."[23]

### 1.  The Social Security Administration's Response to *Lucia*

Within weeks after the decision in *Lucia*, President Trump issued an Executive

Order on July 10, 2018 accepting all administrative law judges appointed under 5

U.S.C. §3105.[24]  The Executive Order stated, in relevant part, that "expanding

responsibility for important agency adjudications, and as recognized by the Supreme

Court in *Lucia*, at least some and perhaps all ALJs are 'Officers of the United States'

and thus subject to the Constitution's Appointments Clause, which governs who may

appoint such officials."[25]

Thereafter, the Acting Commissioner of the Social Security Administration

ratified the appointments of all ALJs and approved their appointments as her own to

---

[20] *Id.* at 2053.
[21] *Id.* at 2055.
[22] *Id.*
[23] *Id.* (quoting *Ryder v. United States*, 515 U.S. 177, 182-83 (1995).
[24] Section 3105 provides:  "Each agency shall appoint as many administrative law judges as are necessary for proceedings required to be conducted in accordance with section 556 and 557 of this Title.  Administrative law judges shall be assigned to cases in rotation so far as practicable, and may not perform duties inconsistent with their duties and responsibilities as administrative law judges."
[25] *Bizarre*, 364 F. Supp. 3d at 421.

address any Appointments Clause challenges involving Social Security claimants.[26]

The Social Security Administration issued an "Emergency Message" which provided

guidance to ALJs on Appointments Clause challenges.[27]  It did not distinguish *Lucia*

because this case arose in an SEC proceeding.[28]  This Emergency Message

acknowledges the requirement of constitutionally appointed administrate law judges.[29]

> The Emergency Message 'instructs [ALJs] and administrative appeals judges (AAJs) on how to address Appointments Clause challenges regarding the appointment of ALJs or AAJs.'  The Administration instructed its ALJs on the procedure to address Appointment Clause challenges made before and after the Acting Commissioner's July 16, 2018 ratification of ALJ appointments.  For Appointments Clause challenges made at the ALJ level before July 16, 2018, ALJs are instructed to acknowledge the challenge on the record and document an Appointments Clause challenge in the Agency's case processing systems 'for any necessary action.'  For any challenges made at the ALJ level after July 16, 2018, ALJs are instructed to '**only** respond orally that the hearing decision will acknowledge that the argument was raised' and, when issuing a written decision, add set language rejecting the constitutional challenge.

> For timely Appointment Clause challenges and timely requests for Appeals Council review, the Appeals Council is instructed to 'consider the challenge in the context of fact of the case (including, but not limited to, the date of the ALJ decision and the date the challenge was raised) in determining whether there is a basis to grant review.'  The Appeals Council determines whether granting review is appropriate 'when considering both the decision on the merits and any potentially Appointments Clause issue.'[30]

This Emergency Message was later replaced by Soc. Sec. Admin EM-180003

REV 2, instructing ALJs of the SSA to acknowledge, but not to review, Appointments

---

[26] *Culclasure*, 375 F. Supp. 3d at 563.
[27] Soc. Sec. EM-18003 REV 2,
   https://secure.ssa.gov/apps10/reference.nfs/links/08062018021PM.
[28] *Culclasure*, 375 F. Supp. 3d at 563.
[29] *Id.*
[30] *Id.* at 563-64 (citations omitted).

Clause challenges.[31]  Neither the first nor second Emergency Messages were in effect at the time of plaintiff's hearing before the ALJ or subsequent administrative appeal.

### 2.  "Timely Challenge" Analysis under *Lucia*

In *Lucia*, the petitioner raised an Appointments Clause challenge on appeal to the SEC, but not at the ALJ level.[32]  The Supreme Court did not define "timely challenge", nor did it address the exhaustion argument.  In *Lucia*, the Court found the challenge on appeal to the SEC timely.[33]

Judge Kearney later addressed *Lucia* in *Culclasure* wherein he noted:  "[i]t follows the Court in *Lucia*, to the extent it even addresses an issue-exhaustion argument, found a petitioner does not forfeit his claim for failing to raise it at the ALJ level."[34]  The *Culclasure* decision did not agree with the defendant that *Lucia* required a litigant must raise a timely challenge in proceedings before the agency.  Moreover, as noted in *Bizarre v. Berryhill*, the "majority's statement [in *Lucia*] as to timeliness was not a bright-line demarcation . . . it simply confirmed the obvious timeliness of the fully preserved and exhausted claim as presented."[35]

In the present matter, this court is similarly unwilling to accept defendant's invitation to read *Lucia* as imposing a "bright-line" timeliness requirement regarding Appointments Clause challenges.

---

[31] Soc. Sec. Admin EM-18003 REV 2,
   https://secure.ssa.gov/apps10/reference.nfs/links/088062018021025PM
[32] *Culclasure*, 375 F. Supp. 3d at 569.
[33] *Id.*
[34] *Id.*
[35] 364 F. Supp. at 421.

## B. Exhaustion

### 1. Judicial imposition of an exhaustion requirement is improper

In *Sims v. Apfel*,[36] the Court addressed the question of whether a claimant seeking judicial review of a denial of a Social Security claim waives any issue the claimant failed to include in a request for review before the Appeals Council.[37] The Court did not examine whether a claimant must exhaust issues before an ALJ.[38]

In *Sims*, the Court described the question as one of "judicially created issue-exhaustion,"[39] and rejected the Commissioner's issue exhaustion argument that a claimant must not only obtain a final decision on his claim for benefits (administrative exhaustion), but must also "specify that issue in his request for review by the Council" (issue exhaustion).[40] The Court differentiated Social Security proceedings from other administrative actions, finding such proceedings "inquisitorial" rather than "adversarial,"[41] because the ALJ's duty is to "investigate the facts and develop arguments both for and against granting benefits."[42] The Supreme Court noted that "[w]here the parties are expected to develop the issue in an adversarial administrative proceeding, its seems to us the rational for requiring issue exhaustion is at its greatest."[43] However, in the Social Security context – an inquisitorial proceeding – the

---

[36] 530 U.S. 103 (2000).
[37] *Id.*
[38] *Id.*
[39] *Id.* at 109.
[40] *Id.* at 107.
[41] *Id.* at 111.
[42] *Id.*
[43] *Id.* at 110.

requirement for issue exhaustion is considerably weaker.[44]  In its analysis in *Sims*, the

Court emphasized the "wide differences between administrative agencies and courts",

and specifically acknowledged that the "differences between courts and agencies are

nowhere more pronounced that is Social Security proceedings."[45]  The Court

determined that in Social Security matters "a judicially created issue-exhaustion

requirement is inappropriate", and "[c]laimants who exhaust administrative remedies

need not also exhaust issues in a request for review by the Appeals Council in order to

preserve judicial review of those issues."[46]

 Courts that impose an issue exhaustion requirement in the Social Security

context at the ALJ level have done so only with respect to issues directly within the

ALJ's purview,[47] as noted in *Ginsburg v. Richardson*.[48]  In the instant matter, defendant

contends that plaintiff's failure to raise her Appointments Clause claim at any point in

the administrative process forfeited her claim, relying on *Ginsburg*.  Defendant further

maintains that although *Ginsburg* was subsequently abrogated by *Sims*, the holding in

*Sims* did not disturb *Ginsburg's* "separate holding" that a claimant must present all

issues to the Agency to preserve judicial review.[49]  However, as Judge Kearney found:

> Addressing the same argument in *Muhammad v. Berryhill*, Judge Rice
> rejected the Commissioner's *Ginsburg* argument.  Judge Rice found
> *Ginsburg* 'concerned the basic application of the Social Security Act and
> regulations, not a structural constitutional challenge to the SSA
> adjudicatory system at large.'  Chief Judge Conner rejected an application

---

[44] *Id.*
[45] *Id.*
[46] *Id.* at 112.
[47] *Brunson*, 2019 U.S. LEXIS 125355, at *14.
[48] 436 F.2d 1146, 1152 (3d Cir. 1971).
[49] D.I. 20 at 17.

of *Ginsburg* for similar reasons, finding the imposition of an exhaustion requirement before the ALJ is 'quite logical for matters within the expertise of the agency and its ALJs', such as 'claims of prejudice on the part of the ALJ and a failure to record portions of the testimony.' We agree.[50]

In *Ginsburg*, the claimant maintained she was denied the right to a fair hearing because the hearing examiner "displayed prejudice towards her."[51] The appellate court found that the claimant should have requested the examiner to withdraw as provided under the Social Security regulations, if she believed that the ALJ was prejudiced.[52] Thus, her failure to make this request during the hearing constitute a waiver of her later objection.[53] As Judge Strawbridge pointed out in *Brunson*, mandating exhaustion in scenarios such as *Ginsburg* "made sense in that the claims were squarely within the bailiwick of the SSA and its ALJs."[54] However, ALJs are ill-equipped to handle or address constitutional issues.[55]

This court, therefore, agrees with the well-reasoned opinions of Chief Judge Conner and Judge Kearney that imposing an issue-exhaustion requirement at the ALJ

---

[50] *Culclasure*, 375 F. Supp. 3d at 568 (citations omitted).
[51] 436 F.2d at 1151-52.
[52] *Id*. at 1152.
[53] *Id.*
[54] 2019 U.S. Dist. LEXIS 125366, at *14, citing *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (noting "the ALJ, rather than the Court, was in the optimal position" to resolve the claimant's agency-specific challenge); *Ginsburg*, 436 F.2d at 1151-52 (commenting on how a claimant could have contemporaneously requested for the ALJ to recuse himself from the hearing). Enforcing the general rule in these contexts accord with the Agency's underlying principles. *See Wilson v. MVM, Inc.*, 475 F.3d 166, 173 (3d Cir. 2007) (administrative issue exhaustion "respect[s] executive autonomy by allowing an agency the opportunity to correct its own errors, provides courts with the benefit of an agency's expertise, and serves judicial economy by having the agency compile the factual record.") (internal quotations and citations omitted). *See also Bizarre*, 364 F. Supp. 3d at 422.
[55] *Id.*

level is appropriate for matters within the Agency's and the ALJ's expertise, but is inapplicable when a matter involves that analysis of "a constitutional question which ALJs are powerless to decide."[56]

*Ginsburg*, therefore, does not require a claimant to raise an Appointments Clause challenge before the Agency or later suffer forfeiture.

The Supreme Court's decision in *Sims* identified the limited role of judges in creating an exhaustion doctrine in Social Security appeals. Therefore, this court, as other courts in this circuit have found, applies the *Sims* analysis to the present matter, and reaches the same conclusion.

### 2. Congress has not imposed a statutory issue exhaustion requirement for SSA proceedings

As the Supreme Court instructed in *Sims*, courts first look to statutory authority in determining the presence or absence of an issue exhaustion requirement.[57] For many agencies, Congress has expressly imposed such a requirement.[58] The Court reasoned in *Sims* that the "requirements of administrative issue exhaustion are largely creatures of statute"[59], and no statutes or regulations within the Social Security Act exist requiring issue exhaustion.[60] Although the Court has imposed an issue exhaustion requirement

---

[56] *Culclasure*, 375 F. Supp. 3d at 569; *Bizarre*, 364 F. Supp. 3d at 421-22.
[57] 530 U.S. at 107.
[58] For example, 15 U.S.C. §78y(c)(1) (requiring issue exhaustion before the SEC); 29 U.S.C. §160(e) (National Labor Relations Board); 15 U.S.C. §79x (Public Utility Holding Company Act); 29 U.S.C. §210 (Fair Labor Standards Act). SSA, conversely, has not such statutory mandate. *See Sims*, 530 U.S. at 108 ("[T]he Commissioner does not contend that any statute requires issue exhaustion in the request for review.").
[59] 530 U.S. at 107.
[60] *Id.* at 111-112.

even without a statute or regulation, it concluded such a requirement is inapplicable in the Social Security context.[61]

### 3. SSA regulations do not impose an issue exhaustion requirement

Defendant contends that the SSA regulations require a claimant to raise all issues, including constitutional matters, to the agency at the earliest possible juncture.[62] This court disagrees. Social Security regulations do not explicitly require a claimant to raise a constitutional issue during the administrative proceedings to preserve it for judicial review. While an SSA claimant must state the bases for a request for review of an adverse disability determination in a petition for ALJ review under 20 C.F.R. §404.933(a)(2), the issues before the ALJ are those "brought out in the initial, reconsidered or revised determination that were not decided entirely in the [claimant's] favor"[,] under 20 C.F.R. §404.946(a).[63] As the *Brunson* court explained:

> These issues are those germane to the disability application itself, most commonly in the form of objections to the agency's treatment of medical or vocation evidence or testimony. We acknowledge that an ALJ or any party may also raise new issues prior to the hearing, but we understand this is designed merely to afford a claimant the opportunity to identify new disability-related evidence or testimony obtained after the written request for hearing, but before the hearing itself. We therefore decline to read these regulations to impose the sweeping issue exhaustion requirement as the Commissioner contends.[64]

Furthermore, constitutional claims lies outside an ALJ's authority.[65]

---

[61] *Id.* at 108, 112.
[62] D.I. 20 at 22.
[63] *Brunson v. Saul*, 2019 U.S. Dist. LEXIS 125366, at *12-13.
[64] *Id.* (citations omitted).
[65] *Id.* at 8, citing *Weinberger v. Salfi*, 422 U.S. 749, 767 (1975) ("[M]atter[s] of constitutional law [are] concededly beyond [SSA's] competence to decide."); *Bizarre v. Berryhill*, 364 F. Supp. 3d 418, 424 (M.D. Pa 2019) (quoting *Califano v. Sanders*, 430 U.S. 99, 109 (1977)) ("Constitutional questions obviously are unsuited to resolution in

Defendant has identified no statutory authority that SSA ALJs possessed the

ability to resolve Appointments Clause challenges at the time of plaintiff's hearing or

appeal.[66]  Instead, defendant contends that the SSA regulations, 20 C.F.R. §404.924

and 20 C.F.R. §416.1424, impose an expedited appeals process in certain cases where

constitutional issues are to be raised.[67]  The regulation referencing a challenge to a

"provision in the law that [the claimant] believe[s] is unconstitutional" arises in the

expedited appeal process which is optional, and "would not require [a claimant] to raise

[his] Appointments Clause challenge before the ALJ because it does not affect the

merits of [his] claim for benefits [and] [i]nstead, it only impacts whether the ALJ can

address [his] claim."[68]  Therefore, this court finds that the Social Security regulations do

not require a claimant to raise a constitutional issue at the administrative level.

Other courts have found that the "Commissioner could have cured an ALJ's

defective appointment upon a pre-*Lucia* objection by a claimant, and note the

Commissioner's post-Lucia ratification of the ALJ appointments as evidence of the relief

available to the claimant."[69]  In *Muhammed v. Berryhill*,[70] the court suggested that the

Commissioner could have assigned a different ALJ to preside over an objecting

administrative hearing procedures and, therefore, access to the courts is essential to
the decisions of such questions."); cf. *Ryder v. United States*, 515 U.S. 177 (1995)
(finding the United States Court of Military Appeals as capable of determining the
constitutionality of Coast Guard Court of Military Review appointments).
    [66] Soc. Sec. Admin. EM-18003 REV (June 25, 2018) ("SSA lacks the authority to
finally decide constitutional issues such as [Appointments Clause claims].").
    [67] D.I. 20 at 22.
    [68] *Culclasure v. Comm'r. of Soc. Sec. Admin.*, 375 F. Supp. 3d 559, 570 ((E.D.
Pa. 2019); 20 C.F.R. §404.924(d).
    [69] *Brunson*, 2019 U.S. Dist. LEXIS 125366, at *8, citing *Muhammad v. Berryhill*,
381 F. Supp. 3d 462 (E.D. Pa. 2019).
    [70] 381 F. Supp. 3d 462 (E.D. Pa. 2019).

claimant's hearing.  The *Brunson* court was unpersuaded by this argument:

> [W]e agree that it is speculative to infer that an ALJ possessed the authority to rule on his own constitutional status by virtue of the Commissioner's subsequent ratification of the appointment. . . .  It is equally speculative to conclude that the Commissioner would have revisited its ALJs' appointments upon [plaintiff's] or any other claimant's objection prior to the Supreme Court's opinion and prior to the President's executive order.  As to the court's latter point, reassignment to a different ALJ would have been pointless in that every ALJ was, at the time, tainted with an unconstitutional appointment.[71]

This court is similarly unpersuaded.

## C.     Waiver

Chief Judge Conner, and Judges Kearney, Lloret and Strawbridge waived the requirement to raise an Appointments Clause challenge at the administrative level. This court agrees with their findings and analyses.

Judges Kearney, Lloret and Strawbridge applied the reasoning in *Freytag v. Commissioner of the Internal Revenue*.[72]  They held an Appointments Clause challenge, even if required to be made at the ALJ level, would have been futile because the ALJ could not have ruled on the issue.

Chief Judge Conner in *Bizarre* found the Commission's exhaustion argument unconvincing, and specifically noted that even if the claimant should have raised an Appointments Clause challenge during the administrative process to preserve the issue for judicial review, such omission would have been excused under *Freytag*.[73]  In his thorough analysis of *Freytag*, Chief Judge Conner reasoned that the Appointments

---

[71] 2019 U.S. Dist. LEXIS 125366, *9.
[72] 501 U.S. 868 (1991).
[73] 364 F. Supp. 3d 424-25.

Clause argument "features many of the same hallmarks underlying *Freytag's ratio decidendi*"[74], and that the constitutional challenge is "neither frivolous or disingenuous"[75], noting the President's Executive Order issued after *Lucia* and the Solicitor General's post-*Lucia* guidance conceding all ALJs "are inferior officers and must be appointed as such."[76]  Moreover, the ALJ's decision "impacts the validity of the underlying proceeding" because the "final agency decision in this case was issued by an administrative officer whose appointment did not comply with constitutional requirements."[77]

Defendant contends that the Supreme Court emphasized that *Freytag* was a rare case.[78]  Chief Judge Conner highlighted three factors in *Bizarre* which supported the finding of a rare case under *Freytag*:  (1) that the Commissioner identified no authority, and the absence of any suggestion "that the agency's ALJs could resolve constitutional challenges to their own appointment," with the Agency's subsequent Emergency Message instructing its ALJs to document, but not address, an Appointments Clause challenge;[79] (2) that claimants may raise constitutional challenges before the Appeals Council, but they are not required to do so under *Sims*[80]; and (3) unlike other agencies, "the Social Security Administration has no statutory analogue warning its claimants that failure to raise a constitutional question before the agency

---

[74] 364 F. Supp. 3d at 423.
[75] *Id.*
[76] *Id.*
[77] *Id.*
[78] D.I. 20 at 16.
[79] 364 F. Supp. at 425
[80] *Id*.  *See also Sims*, 530 U.S. at 112.

may risk forfeiture of the issue."[81]

This court finds that the present matter falls under the rare case exception of *Freytag* warranting remand for a rehearing before a different, constitutionally appointed ALJ.

## IV.   RECOMMENDED DISPOSITION

Consistent with the findings herein,

IT IS RECOMMENDED that

1.  Plaintiff's motion (DI 16) be granted;

2.  Defendant's motion (DI 19) be denied;

3.  This matter be remanded for proceedings before a properly appointed ALJ under Article II, Section 2, Clause 2 of the United States Constitution.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), FED. R. CIV. P. 72 (b), and D. DEL. LR 72.1, any objections to this Report and Recommendation shall be filed within fourteen (14) days from the date of this Recommendation and limited to ten (10) pages. Any response shall be limited to ten (10) pages and filed within fourteen (14) days thereafter.

The parties are directed to the Court's Standing Order in Non-Pro Se Matters for Objections Filed under FED. R. CIV. P. 72 dated October 9, 2013, a copy of which is found on the Court's website (www.ded.uscourts.gov.).

January 9, 2020                                   /s/  Mary Pat Thynge
                                                     CHIEF U.S. MAGISTRATE JUDGE

---

[81] 364 F. Supp. 3d